UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――――X    Case No.

In re:

                                                                        Chapter 11

AMR Electrical Contracting Corp.,

                Debtor.

――――――――――――――――――――――――X

AFFIDAVIT PURSUANT TO LOCAL
BANKRUPTCY RULE 1007-2

STATE OF NEW YORK    )
                                )   SS.:
COUNTY OF BRONX      )

        Michael Sardo, duly sworn, deposes and says:

        I am the President and Sole Shareholder of the above-referenced debtor and debtor-in-possession (the "Debtor"). I submit this Affidavit in accordance with Local Bankruptcy Rules for the Southern District of New York, Rule 1007-2.

        1.    The nature of the debtor's business and a concise statement of the circumstances leading to the debtor's filing under chapter 11. The Debtor is an electrical contractor on commercial building projects through out the New York metropolitan area. The Debtor works with owners of buildings and subcontractors.

        2.    Over the last several months a disgruntled former employee Kenneth D'Anna filed a number of false and fraudulent mechanics' liens against the Debtor for work he did not perform for the Debtor in an effort to put the Debtor out of business. The Debtor and D'Anna had no contract specifying that D'Anna was to perform any work on these projects. D'Anna was solely a salaried employee. D'Anna was terminated for theft and conversion on February 21, 2018. D'Anna

continues to this date interfering with the business operations of the Debtor including contacting the Debtor's current employees in an effort to have them leave the employ of the Debtor.

3. The Debtor was required in order to continue and complete the electrical work on these projects and to receive continued payments from the owners under the contracts to bond the falsified mechanics' liens filed by D'Anna. The bonding company required that the Debtor put up hundred of thousands of dollars of its own assets as collateral for the bonds. This has created a severe cash flow problem for the Debtor with hundreds of thousands of dollars being held by the bonding company that are necessary to operate the Debtor's business. The sole shareholder and President Michael Sardo was required to use his own personal asserts to remove certain mechanics' liens on certain jobs in order to obtain payment from the owners to the Debtor.

4. Due to the severe cash flow problem by reason of the falsified mechanics' liens, the Debtor has been unable pay its vendors on an ongoing basis and had to use its entire line of credit with TD Bank. Certain important and necessary vendors have placed the Debtor on a COD basis.

5. D'Anna has been calling the Debtor's suppliers, vendors and employees attempting to steal them away.

6. On or about January 1, 2018, the Debtor AMR learned that D'Anna established AMR NJ LLC without any knowledge of AMR, or any authorization by AMR. On or about January 18, 2018, and without authorization, D'Anna took possession of a check in the amount of $93,600.00 payable to the order of AMR, from Cheever Development Corp. ("Cheever"), on account of AMR's work performed on the Walton Avenue Project. D'Anna opened a bank account at Santander Bank, with address at 1837 Victory Boulevard, Staten Island, New York, and titled the account AMR Electric Group Inc., an unknown entity which is not affiliated with AMR. The

Santander Bank account was opened without AMR's knowledge or authority, and AMR and Mike Sardo did not have access to the AMR Electric Group Inc. bank account.

7. On or about January 24, 2018, D'Anna deposited the Cheever check in the amount of $93,600.00 payable to the order of AMR, in the AMR Electric Group Inc. account at Santander Bank, without AMR's knowledge or authority and to which AMR and Mike Sardo did not have access. Upon discovery, AMR demanded that D'Anna return AMR's funds totaling $93,600.00. On or about February 22, 2018, D'Anna transferred the $93,600.00 of AMR's funds from the AMR Electric Group Inc. account. D'Anna refused to return AMR's funds totaling $93,600.00. On February 22, 2018, AMR directed that demand be made on Santander Bank for the return of AMR's funds totaling $93,600.00. Subsequently, Santander Bank issued a stop payment on a certified check representing said funds, reversed the transfer of said funds, returned said funds to the AMR Electric Group, Inc. account, placed a hold on said funds and returned $93,600.00 to AMR.

8. Previously, on February 20, 2018, D'Anna locked himself and Mike Sardo, in Mike Sardo's office at AMR, and forcibly restrained Mike Sardo from leaving his office for approximately 10 minutes. While D'Anna was forcibly restraining Mike Sardo, D'Anna verbally threatened Mike Sardo and his family.

9. On March 22, 2018 AMR sent a cease and desist letter to D'Anna, demanding D'Anna cease and desist from contacting AMR's customers, clients, employees, officers and representatives, and disparaging AMR by threatening to and improperly filing purported liens, notices of pendency, and lis pendens against AMR's customers and client's properties based on false statements that AMR "owes you money" when AMR had fully paid D'Anna and D'Anna has no lienable interest.

10.     D'Anna refuses to cease and desist and continues to file false and fraudulent mechanics' liens in connection with the Debtor's projects and continues to interfere with the Debtor's business operations, including as late as last week calling the Debtor's employees in an effort to get them to leave the Debtor's employ.

11.     Thus, the Debtor requires the protection of Chapter 11, *inter alia*, to reorganize its business in an orderly manner, remove the false and fraudulent mechanic's liens on its projects, reacquire the collateral posted necessary to remove the false mechanics' liens for its cash flow, work out a plan to repay its secured lender TD Bank, form a plan of reorganization to repay its unsecured creditors and pursue D'Anna for the damages he has inflicted on the Debtor and emerge as a continued viable business entity.

12.     This case was not originally commenced under chapter 7 or chapter 13.

13.     No committee was organized prior to the order for relief in this chapter 11 case.

14.     The Debtor has filed Official Form 204 setting forth the following information with respect to each of the holders of the twenty (20) largest unsecured claims, excluding insiders: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the telephone number, e-mail address, the name(s) of person(s) familiar with the debtor's account, the amount of the claim, and an indication of whether the claim is contingent, unliquidated, disputed or partially secured;

15.     Information with respect to each of the holders of the five (5) largest secured claims: the name, the address (including the number, street, apartment or suite number, and zip code, if not included in the post office address), the amount of the claim, a brief description and an estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed: The Debtor only has two secured creditors:

4

      a.    TD Bank, 373 Jericho Turnpike, Floral Park, New York 11001, Amount of Claim $492,952.23 drawn down on $500,000 Line of Credit; estimate of value of collateral securing the claim is approximately $1,103,043. The claim is undisputed.

      b.    Ford Motor Credit, Box 220564, Pittsburgh, PA 15257, Amount of Claim $48,340.92; estimated value of collateral securing the claim is $43,000. The claim is undisputed.

16.    Summary of the debtor's assets and liabilities: Assets - $1,103,043; Liabilities - $1,496,283.

17.    The Debtor does not have any publicly held shares of stock, debentures or other securities.

18.    List of all of the Debtor's property in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity, giving the name, address, and telephone number of each such entity and the court in which any proceeding relating thereto is pending: $246,842 cash collateral being held by Pederson & Sons Bonding Company and SureTec Insurance Company, 3033 5th Avenue, #300, San Diego, CA 92103, pursuant to bonds issued to remove Mechanics' Liens on Debtor's projects.

19.    Premises owned, leased or held under other arrangement from which the Debtor operates its business: 875 East 145th Street, Bronx, NY 10455; 62-59 Woodhaven Blvd., Rego Park NY 11374

20.    The location of the Debtor's substantial assets, the location of its books and records – 875 East 145th Street, Bronx, New York and Savignano Accountants, 47-46 Vernon Blvd., Long Island City, NY 11101. There are no assets of the Debtor held outside the territorial limits of the United States.

21. The nature and present status of each action or proceeding, pending or threatened, against the debtor or its property where a judgment against the debtor or a seizure of its property may be imminent – None.

22. The names of the individuals who comprise the debtor's existing senior management, their tenure with the debtor, and a brief summary of their relevant responsibilities and experience: Michael Sardo, President, 15 Years, responsible for acquisition of all electrical contract jobs, supervision of all electrical installation jobs and employees and day-to-day operations of the business.

(b) Additional Information if Business is to Continue. The Debtor intends to continue to operate its business:

(1) the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the filing of the chapter 11 petition: $201,600.

(2) the amount paid and proposed to be paid for services for the thirty (30) day period following the filing of the chapter 11 petition to Michael Sardo, sole officer, stockholder and directors: $12,600; and

(3) a schedule, for the thirty (30) day period following the filing of the chapter 11 petition, of estimated cash receipts and disbursements, net cash gain or loss, obligations and

receivables expected to accrue but remain unpaid, other than professional fees, and any other information relevant to an understanding of the foregoing:

Estimated Cash Receipts from Jobs for 30 day period:   $378,488.00

Estimated Disbursements for 30 Day Period:

| | |
|---|---|
| Monthly Payroll | $201,600 |
| Executive Salary | 12,600 |
| Rent | 3,950 |
| Vendor Payments | 71,000 |
| Misc repairs | 3,000 |

Total Estimated Disbursements for 30 Day Period   -$291,550.00

Net Cash Gain for 30 Day Period   $ 86,938.00

Outstanding Account Receivables: $127,713.21

Dated: June 30, 2018
Bronx, New York

_____
Michael Sardo

Sworn to before me this
30th day of June 2018

_____
Notary Public

DANIEL R. WOTMAN
Notary Public, State of New York
No. 02WO6035698
Qualified in Nassau County
Commission Expires Jan. 3, 20 22

7